E-FILED
Monday, 21 September, 2026 02:00:29 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| INTELLECTROS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04166-SLD-RLH |
| | ) | |
| DEERE & COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this case, Plaintiff Intellectros LLC ("Intellectros") is suing Defendant Deere & Company ("Deere") for patent infringement. Intellectros is the assignee of two method patents that it alleges were infringed by Deere's implementation of a private 5G network in its factories in a manner that complied with the standard governing 5G in the United States. Before the Court is Deere's motion to dismiss, ECF No. 18. Deere argues that Intellectros's complaint does not state a claim for patent infringement because it does not plead facts showing that all implementations of the 5G standard are covered by the claims of Intellectros's patents or that Deere adheres to the optional portions of the 5G standard that Intellectros alleges are covered by its patents. Because Intellectros does not adequately allege that Deere implements the optional portions of the 5G standard, the Court GRANTS the motion to dismiss.

Also before the Court is Deere's motion for leave to reply, ECF No. 24. Because Intellectros's response introduced new third-party materials, and in the interest of completeness given the complexity of the technology at issue, the Court GRANTS Deere's motion, to provide it an opportunity to address the unforeseen materials and corresponding arguments.

## BACKGROUND[1]

Intellectros is the assignee of two patents covering certain methods for wireless communication in cell networks. U.S. Patent No. 9,755,797 ("the '797 Patent") is for a "Localization-Based Beamforming Scheme for Systems with Multiple Antennas." U.S. Patent No. 9,794,839 ("the '839 Patent") is for a "Mechanism for Radio Link Monitoring and Radio Link Failure Handling in Small Cell Networks." Intellectros alleges that Deere directly breached both patents when it implemented a private 5G network in its factors, including its factory in East Moline, Illinois. Deere's network complies with the 3GPP standards—the governing standards for 5G in the United States. Deere's adoption of a private 5G network has improved Deere's factories by providing greater speed, precision, and reliability in their operations. For example, its use of a 5G network allows for rapid reconfiguration of assembly lines and permits smoother communication between automated devices on the factory floor. To implement a 5G network in its factories, Deere uses Nokia radios.

Intellectros brought suit for patent infringement on September 23, 2025. *See generally* Compl., ECF No. 1. After Deere filed a first motion to dismiss, ECF No. 11, Intellectros filed an amended complaint on January 16, 2026, ECF No. 15. This is now the operative complaint. Deere then filed a renewed motion to dismiss and accompanying memorandum of law asking the Court to dismiss Intellectros's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. Dismiss; Mem. Supp. Mot. Dismiss, ECF No. 19. Deere argues that Intellectros does not state a claim for patent infringement because its complaint contains next to no information about Deere's alleged private 5G network. Mem. Supp. Mot. Dismiss 1.

[1] Unless otherwise stated, the facts described in this section are as alleged in Intellectros's amended complaint, ECF No. 15. For the sake of ruling on the motion to dismiss, the Court "accept[s] as true all factual allegations in the . . . complaint and draw[s] all permissible inferences in [Intellectros's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

Deere contends that Intellectros's bare assertion that Deere's network complies with the 3GPP standards is not enough to state a claim for relief since Intellectros's patents do not cover all implementations of the 3GPP standards and the complaint does not contain enough facts to plausibly allege that Deere implements the optional portions of the 3GPP standards covered by Intellectros's patents. *Id.* at 1–2. Intellectros filed a response, maintaining that the facts alleged in the operative complaint plausibly suggest that Deere's network implements the optional features of the 3GPP standards that are covered by Intellectros's patents. Resp. Mot. Dismiss 1–2, ECF No. 21. Deere then filed its motion for leave to reply, which Intellectros opposes, *see generally* Resp. Mot. Leave Reply, ECF No. 25.

## DISCUSSION[2]

### I. Motion for Leave to Reply

"A reply to the response is only permitted with leave of Court." Civil LR 7.1(B)(3). Circumstances justifying a reply include "the non-movant's introduction of new and unexpected issues in his response and the interest of completeness." *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 658 (C.D. Ill. 2023) (quotation marks and alteration omitted). Deere seeks leave to file a reply because Intellectros's response introduced new materials to support the infringement claims and because a reply is needed to correct Intellectros's mischaracterization of the complaint. Mot. Leave Reply 1–2. Because Intellectros introduced new third party materials in its response, and in the interest of completeness given the complexity of the technology at issue, the motion for leave to reply is GRANTED.

---

[2] Because the Federal Circuit would have exclusive jurisdiction over an appeal of this order, *see* 28 U.S.C. § 1295(a)(1), its case law is binding. *See Sample v. United States*, 838 F. Supp. 373, 375 (N.D. Ill. 1993); *Bradley v. L'Oreal USA, Inc.*, No. 10-cv-433-DRH, 2010 WL 3463203, at *2 (S.D. Ill. Aug. 30, 2010). However, with respect to any procedural matters that are not unique to patent law, Seventh Circuit precedent controls. *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1006 (N.D. Ill. 2003); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1374 (Fed. Cir. 2021).

## II. Motion to Dismiss

### a. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To state a claim for relief, a complaint's "well-pleaded factual allegations" must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). That is, a complaint must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff must plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged and to rule out obvious alternative explanations for the defendant's conduct . . . ." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (quotation marks and alteration omitted). When weighing a motion brought under Rule 12(b)(6), the court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). However, the court does not accept as true a complaint's legal conclusions. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013).

To state a claim for patent infringement, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). A complaint need only "place the alleged infringer on notice of what activity is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quotation marks and alteration omitted). However, "a plaintiff cannot assert a plausible claim for infringement . . . by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations

that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353. "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* The more complex the technology at issue, the more detailed a plaintiff's allegations must be to state a claim for infringement. *Compare Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that relatively sparce allegations were sufficient to state a claim because the case involved "a simple technology"); *with Tech in Ariscale, LLC v. Razer USA, Ltd.*, 703 F. Supp. 3d 1153, 1159 (C.D. Cal. 2023) ("Cases involving complex technology require more detailed factual allegations to meet the notice pleading standard.").

**b. Analysis**

The "ordinary manner" of establishing patent infringement is "comparing the claims [of the patent] to the accused products." *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1380 (Fed. Cir. 2022) (quotation marks and alteration omitted). In certain circumstances, however, a plaintiff may alternatively compare the claims to an industry standard. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010); *INVT SPE*, 46 F.4th at 1377. Under this method, "[i]nfringement can be proven based on an accused product's use of an industry standard" so long as the reach of the patent's claims "includes any device that practices the standard." *INVT SPE*, 46 F.4th at 1377 (quotation marks omitted). A patent that covers all possible implementations of a standard is known as a "standard essential" patent. *Id.* Patent infringement may be alleged in this manner because, in such a case, "if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as

comparing the claims to the accused product." *Fujitsu*, 620 F.3d at 1327. To defeat a claim of infringement made in this way, "[a]n accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard." *Id.*

Intellectros does not attempt to compare its patents' claims to Deere's network. It argues only that Deere's private 5G network complies with the 3GPP standards and, consequently, that it necessarily infringes Intellectros's patents. *See generally* Am. Compl.; Resp. Mot. Dismiss. Intellectros further acknowledges its patents are not standard essential—that is, that they do not cover all implementations of the 3GPP standards. Resp. Mot. Dismiss 8. Instead, Intellectros contends that its patents cover certain optional sections of the standards and that Deere practices those optional portions. *Id.* In order to state a claim for patent infringement in this way, Intellectros's complaint must plausibly allege "that the accused products implement any relevant optional sections of the standard." *Fujitsu*, 620 F.3d at 1328.[3]

Deere argues that Intellectros's complaint does not state a claim for infringement because it alleges neither alleges that Deere's private 5G network implements the relevant optional sections of the 3GPP standards nor that Intellectros's patents cover all implementations of those same sections. Mem. Supp. Mot. Dismiss 2. Because the Court finds that Intellectros's

---

[3] *Fujitsu* and *INVT SPE* came before the court after the factual record had already been developed, *Fujitsu* on appeal from summary judgment, *Fujitsu*, 620 F.3d at 1325, and *INVT SPE* on appeal from a final determination by the International Trade Commission, *INVT SPE*, 46 F.4th at 1364. While the Court is faced with a pre-discovery motion to dismiss, the principles of these cases involving the nature of a standard essential patent and the elements of a plaintiff's claim still apply. *See Stragent, LLC v. BMW of N. Am., LLC*, Nos. 6:16-cv-446-RWS-KNM, 6:16-cv-447-RWS-KNM, 6:16-cv-448-RWS-KNM, 2017 WL 2821697, at *6 (E.D. Tex. Mar. 3, 2027) (explaining that the substantive holding of *Fujitsu* applies at the motion to dismiss stage to require that a complaint raise factual allegations—not proof—showing compliance with an industry standard to survive a motion to dismiss).

At this stage, Intellectros need not prove that Deere in fact implemented the optional sections of the 3GPP standards, but since Intellectros's claim depends on the accused product's compliance with the relevant optional sections, its complaint must plead facts sufficient to plausibly permit the inference that Deere's network complied with those sections. *See Fujitsu*, 620 F.3d at 1328 (holding that to establish infringement based on compliance with an industry standard that contains optional sections, a plaintiff must "prove that the accused products implement any relevant optional sections of the standard").

complaint does not plausibly allege that Deere's network implements the relevant optional sections of the 3GPP standards, it does not reach the question of whether Intellectros's patents cover all implementations of those sections. The Court first addresses whether Deere's network implements the optional sections purportedly covered by the '797 Patent and then turns to the optional sections relevant to the '839 Patent.

**i. The '797 Patent**

In attempting to state a claim for infringement of the '797 Patent, Intellectros's complaint follows a distinct pattern. First, in one paragraph of body text, Intellectros alleges that Deere infringed the '797 Patent "by performing actions comprising using or performing the claimed method that comply with the 5G standard in its factories." Am. Compl. 3. Following are six pages of quotes from a variety of webpages discussing Deere's implementation of a private 5G network in its factories. *Id.* at 3–9. The next five paragraphs address, in turn, each of the five paragraphs in claim one of the '797 Patent. *See id.* ¶¶ 12–16. Each paragraph contains: (1) an allegation, made by merely restating the corresponding paragraph of the claim, that Deere's network practices a method covered by the claim, (2) a brief statement that Deere's network is compliant with the 3GPP standards, (3) a preview of how the 3GPP standards performs the method claimed by the '797 Patent, and (4) extended quotations from the 3GPP standards and other websites explaining how 5G networks function.

Paragraph 12 is illustrative. It reads:

> The Accused Instrumentality, compliant with the 5G standard (the "standard" or "5G standard"), practices a method (e.g., positioning method utilized by 5G technology) that comprises receiving a plurality of positioning reference signals (PRSs) from a plurality of base stations (e.g., base stations or transmission points (TPs)) by a user equipment (UE) in a mobile communications network, wherein the UE receives a PRS transmission from a serving base station applied with distinct beamforming vectors (e.g., vectors used in beamforming) for multiple OFDM symbols using multiple antennas. *As shown below, the Accused Instrumentality*

> *practices 5G positioning method compliant with the 5G standard. Positioning is one of the foundational applications of private 5G networks. The inherent properties of Private 5G have all the key components and infrastructure needed for positioning. The Accused Instrumentality has been reported to utilize 5G connected tools for asset tracking using geolocation by utilizing 5G cellular radios and receivers.* **As shown below, 5G standard as disclosed in 3GPP TS 38.305 Section: 4.3.1, Section: 3.1, Section: 3.2, Section: 4.3.3, Section: 4.3.12 and Section 4.3.13 specifies the standard for positioning a user equipment (UE) by sending positioning reference signals (DL-PRS) from a plurality of base stations or transmission points. UE receives DL-PRS transmission from a serving base station. The PRS transmission received from a serving base station is applied with distinct beamforming vectors and transmitted in multiple OFDM symbols using multiple antennas, as shown in TS 37.355 Section: 6.4.3 and TS 36.211 Section: 6.10.4.**

*Id.* at 10 (markup added). The underlined portion asserts that Deere's network practices the method covered by the claim by parroting the language in the first paragraph of claim one of the '797 Patent. *Compare id.*, *with* '797 Patent 14,[4] Am. Compl. Ex. 1, ECF No. 15-1 ("What is claimed is: 1. A method comprising: receiving a plurality of positioning reference signals (PRSs) from a plurality of base stations by a user equipment (UE) in a mobile communications network, wherein the UE receives a PRS transmission from a serving base station applied with distinct beamforming vectors for multiple OFDM symbols using multiple antennas . . . ."). The section in bold describes how the claim encompasses the 3GPP standards. The italicized portion in the middle states that Deere's network is compliant with the 3GPP standards. What follows is seven pages of excerpts from the 3GPP standards, along with quotations from a blog hosted by telecommunications company Ericsson describing how positioning works in private 5G networks. *See* Am. Compl. 11–17. This section attempts to show how Deere's network is compliant with the 3GPP standards. *See id.* at 10 (stating that Deere's network practices a method compliant with the 3GPP standards "[a]s shown below"). The complaint then follows

[4] For ease of reference, the Court refers to the page numbers generated by CM/ECF when referencing the pages of the '797 Patent.

the same formula with respect to the next paragraph of claim one of the '797 Patent in paragraph 13 of the complaint. *See id.* at 18–21.

Deere's basic argument is that this summary recitation of the 3GPP standards and the functionality of 5G networks cannot state a claim because the '797 Patent is not standard essential. Mem. Supp. Mot. Dismiss 6. As a result, Intellectros cannot rely on a blanket allegation that Deere's network complies with the 3GPP standards; the complaint must plausibly allege that Deere's network implements all of the optional sections of the 3GPP standards necessary to bring its implementation within claim one of the '797 Patent. *Id.*

Deere identifies two optional sections of the 3GPP standards that are not alleged to be implemented by its network. *See id.* at 7–10. First, TS 38.305 Section 4.3.1 lists the Standard UE Positioning Methods that comply with the 3GPP standards. It provides:

> The standard positioning methods supported for NG-RAN access are:
> - network-assisted GNSS methods;
> - observed time difference of arrival (OTDOA) positioning based on LTE signals;
> - enhanced cell ID methods based on LTE signals;
> - WLAN positioning;
> - Bluetooth positioning;
> - terrestrial beacon system (TBS) positioning;
> - sensor based methods;
>   - barometric Pressure Sensor;
>   - motion sensor.
> - NR enhanced cell ID methods (NR E-CID) based on NR signals;
> - Multi-Round Trip Time positioning (Multi-RTT based on NR signals);
> - Downlink Angle-of-Departure (DL-AoD) based on NR signals;
> - Downlink Time Difference of Arrival (DL-TDOA) based on NR signals;
> - Uplink Angle of Arrival (UL-AoA), including the Azimuth of Arrival (A-AoA) and the Zenith of Arrival (Z-AoA) based on NR signals.
>
> Hybrid positioning using multiple methods from the list of positioning methods above is also supported.

Am. Compl. 11.

The parties agree that Intellectros's patents do not cover all of the options for positioning methods and that, consequently, Intellectros's infringement claim depends on Deere implementing the DL-TDOA and DL-AOD methods. *See* Am. Compl. ¶ 16; Mem. Supp. Mot. Dismiss 9; Resp. Mot. Dismiss 8. Deere argues that the complaint contains no factual allegations suggesting it uses either the DL-TDOA or the DL-AOD positioning method and, as such, does not state a claim for infringement of the '797 Patent. Mem. Supp. Mot. Dismiss 9. Intellectros responds that it is reasonable to conclude that Deere uses the DL-TDOA and DL-AOD positioning methods "because of the description of Deere's private 5G network" documented in the complaint. Resp. Mot. Dismiss 8; *see* Am. Compl. 3–9.

Intellectros says that Deere cannot be using seven of the methods, as they "are not 5G because they use other communication methods (*e.g.*, WLAN, Bluetooth, sensor base, and LTE)," while Deere uses 5G positioning. Resp. Mot. Dismiss 8. The Court is unconvinced. First, as Deere notes, Intellectros's complaint states that the 3GPP standards disclose the "5G standard." Reply 3, ECF No. 24-1; Am. Compl. 10. It appears to contradict this characterization of the 3GPP standards to claim that seven of the permitted positioning methods are "not 5G." Second, one of the articles Intellectros quotes in the complaint to establish how Deere operates its network states that "many of the networks [operated by Deere] initially rely on LTE 4G technology." Am. Compl. 5 (quoting Brigid Hogan, *John Deere Leadership: Revolutionizing Manufacturing Through Connectivity*, Built In Chicago (June 4, 2025), https://www.builtinchicago.org/articles/john-deeres-leap-5grevolutionizing-manufacturing-through-connectivity). The article states that "Deere is gradually migrating to standalone 5G," but it does not clarify the timeline for full 5G adoption or what methods the future standalone 5G network will employ. *Id.* According to the complaint, then, Deere's 5G network still relies in

part on LTE 4G technology. Even if Intellectros is correct that seven of the methods are "not 5G," the complaint does not adequately allege that, for purposes of Section 4.3.1, the positioning method utilized by Deere does not use non-5G technology.

Intellectros continues that the remaining four methods (excluding DL-TDOA and DL-AOD) "can reasonably be eliminated" because those methods would cause interference and reduced signal strength given the number of devices on Deere's factory floor. Resp. Mot. Dismiss 9. Deere argues that such arguments about the disadvantages of certain methods and technologies cannot remedy the lack of allegations regarding the actual configuration of Deere's network. Reply 4.

The allegations do not raise Intellectros's entitlement to relief "above the speculative level," *Twombly*, 550 U.S. at 555. Intellectros nowhere posits that it would be impossible for Deere to use one of the remaining four methods. *Cf. Fujitsu*, 620 F.3d at 1328 ("Only in the situation where a patent covers *every possible implementation* of a standard will it be enough to prove infringement by showing standard compliance." (emphasis added)). It argues only that Deere "would use" DL-TDOA and DL-AOD because doing so would enhance the capacity of communication channel and avoid interference that would result from reliance on UE-generated positioning signals. Resp. Mot. Dismiss 9. That is, Intellectros believes Deere is using DL-TDOA and DL-AOD because those methods are technologically superior to non-infringing methods. This abstract theorizing about Deere's network is disconnected from any facts about how Deere operates its network. The factual allegations must support an inference that Deere actually utilized an infringing method, not merely that Deere's network would have benefitted from using such a method. Perhaps Deere elected to use a technologically inferior method precisely for the purpose of not infringing Intellectros's patents. Without allegations showing

either how Deere actually operated its network or that Deere could not have used other positioning methods, Intellectros does not plausibly allege that Deere's network employs the DL-TDOA and DL-AOD methods. *See Tech in Ariscale*, 703 F. Supp. 3d at 1160 (granting motion to dismiss because complaint "d[id] not explain the structure or operation of any of th[e] accused products and d[id] not explain how any accused product meets any claim limitation"). Absent further factual allegations about Deere's network, Intellectros cannot leverage the alleged superiority of the DL-TDOA and DL-AOD methods to create a plausible inference that Deere used those methods. If it could, then, arguing that the most technologically prudent course would be to use the DL-TDOA and DL-AOD methods, Intellectros could state a claim of patent infringement against nearly every organization using a private 5G network. Since Intellectros does not hold a standard essential patent, its claims cannot sweep so broadly.

Intellectros further argues that Deere must be using the DL-TDOA and DL-AOD methods because it uses Nokia radios that have enhanced position features with sub-10 cm accuracy. Resp. Mot. Dismiss 9. It asserts that "[s]ub-10 cm accuracy can be achieved by a combination of DL-A[O]D and DL-TD[O]A positioning methods." *Id.* This argument fails for two reasons. First, it is not enough that certain results "can be achieved" by using an infringing method. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quotation marks omitted)). Second, the complaint's allegations about the radios' sub-10 cm accuracy come from Nokia's webpage explaining 5G-Advanced. *See* Am. Compl. 8 (quoting *5G-Advanced Explained*, Nokia, https://www.nokia.com/mobile-networks/monetization/5g-advanced/5g-advanced-explained/ (last visited Aug. 31, 2026). According to that page, 5G-Advanced is a *future* technology that "will enable . . . . enhanced

positioning with sub-10cm accuracy consistently both indoors and outdoors". *Id.* Even if Intellectros could state a claim by alleging use of radios that could achieve sub-10 cm positioning accuracy, the complaint has not alleged that Deere presently employs radios with such capabilities.

In sum, Intellectros's formulaic complaint details copious information about private 5G networks and the 3GPP standards allegedly governing them, but it gives sparse details about the accused instrumentality and no facts plausibly suggesting that Deere's network implements the optional positioning methods listed in Section 4.3.1. Even if Intellectros proved every fact alleged in its complaint, it could not win its case since the complaint does not plausibly allege that Deere used DL-TDOA and DL-AOD positioning methods as opposed to any of the other eleven permitted methods under the 3GPP standards. *See PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1167–68 (Fed. Cir. 2008) ("Under the all-elements rule, an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." (quotation marks omitted)). Intellectros therefore has not adequately pled Deere's compliance with the optional portions of Section 4.3.1 and, consequently, has not stated a claim for infringement of the '797 Patent based on compliance with an industry standard. While the complaint need not plead every element of the claim, *Bot M8*, 4 F.4th at 1352, and the Court must draw all inferences in Intellectros's favor, *Indep. Tr. Corp.* 665 F.3d at 934, the dearth of factual allegations in this case means Intellectros's claims do not rise above the speculative level. In the absence of a standard essential patent, Intellectros cannot state a claim based on mere compliance with the 3GPP standards. And with no facts plausibly alleging that Deere has complied with the optional sections of the standard, that is all it has done. Deere's motion to dismiss Count I is GRANTED.

**ii. The '839 Patent**

In Count II for infringement of the '839 Patent, Intellectros's complaint follows the same formula described above. *See* Am. Compl. 31–52. It thus fails for similar reasons. In its motion to dismiss, Deere identifies several sections of the 3GPP standards that apply to 5G networks only if they are configured in certain ways and argues that the complaint does not plausibly allege that its network was configured accordingly. *See, e.g.*, Mem. Supp. Mot. Dismiss 10–11 (arguing that TS 38.300 Section 6.8 only applies if the UE is "configured with SCG"). Intellectros's sole argument in response is that the complaint alleges Deere's implementation of these optional sections because it alleges that Deere uses 5G dual connectivity[5] in its network. *See* Resp. Mot. Dismiss 10–12.

To support the conclusion that Deere's network employs 5G dual connectivity, Intellectros points to sections of its complaint alleging that Deere uses Nokia radios that operate in 4.9G/LTE and 5G dual mode. *See id.* (citing Am. Compl. 6, 33). Intellectros appears to reference the following quotation in its complaint from Nokia's website: "Airscale remote radio heads (RRH) and baseband units (BBU) can operate in 4.9G/LTE and 5G dual mode to concurrently create 4.9G/LTE and 5G cells." Am. Compl. 33 (quoting *Private Wireless Radio Solutions*, Nokia, https://www.dac.nokia.com/connectivity-solutions/private-wireless/radio-solutions/ (last visited Aug. 31, 2026)). Intellectros also highlights that, in its complaint, Deere's network "is described as having 'smoother transitions for devices in motion [for handoffs between access points], making it ideal for AGVs [Automated Guided Vehicles], robots and other mobile equipment,' which is indicative of using dual connectivity." Resp. Mot. Dismiss 11

[5] Dual connectivity radios allows UE to connect with two nodes. *See* Am. Compl. 32–33. This improves the reliability and flexibility of the network. *Id.* In its complaint, Intellectros states that "[d]ual connectivity is a common and key capability of 5G networks." *Id.* at 32.

(alterations in original) (quoting Am. Compl. 5). Deere replies that Intellectros has not plausibly alleged that Deere's network utilizes dual connectivity because the complaint does not state *which* Nokia radios Deere uses, and even assuming Deere uses dual-connectivity capable radios, the complaint does not allege that Deere operated its radios in dual-connectivity mode. Reply 5–7.

Intellectros does not plausibly allege that Deere's network utilizes dual connectivity. The complaint clearly alleges that Deere uses Nokia radios, *see* Am. Compl. 6, but it nowhere specifies the model used by Deere. And while the complaint alleges facts showing that "Airscale remote radio heads . . . and baseband units . . . can operate in 4.9G/LTE and 5G dual mode," *id.* at 33, there are no allegations that this is a feature of all Nokia radios. Moreover, even if Deere's network uses Airscale remote radio heads, the complaint only alleges that the radios *can* operate in dual-connectivity mode, not that they *necessarily* operate in that mode. Since the claim language in the '839 Patent only covers methods *actually configured* in a certain manner and performing certain functions—as opposed to merely *being capable of* such configurations and functions—to state a claim, Intellectros must plausibly allege that Deere actually operated the radios in its network in dual-connectivity mode.[6] *See INVT SPE*, 46 F.4th at 1377 (explaining that when "infringement requires actual performance of the recited functions by the accused device," the device "does not infringe unless it actually operates as claimed").

---

[6] Intellectros appears to concede that the '839 Patent only covers methods that actually utilize dual-connectivity. *See* Resp. Mot. Dismiss 10–12 (arguing that Deere's network implements 5G dual connectivity). The claim language supports this conclusion. It covers a method "configuring" two cell groups, each "containing" serving cells, wherein the user equipment "associates" a first Medium Access Control ("MAC") entity with an anchor base station and a second MAC entity with a drift base station. '839 Patent 15, Am. Compl. Ex 2, ECF No. 15-2; *see also* Resp. Mot. Dismiss 3 (explaining, *inter alia*, that "in a 5G dual connectivity configuration, the UE is configured with two MAC entities: one MAC entity for the MCG (Master Cell Group) and one MAC entity for the SCG (Secondary Cell Group)"). The claim does not use language stating that it covers networks that "can be configured" in such a manner or "are capable of associating" with MAC entities in such a way, nor does it use other language that would suggest it covers any networks that are not actually configured in the manner described in the claim.

Intellectros attempts to bridge this gap and allege that Deere actually utilized dual connectivity by stating that Deere's network has "smoother transition for devices in motion . . . which is indicative of using dual connectivity." Resp. Mot. Dismiss 11 (quoting Am. Compl. 5). However, Intellectros fails to explain how that feature is indicative of dual connectivity or identify an authority supporting its conclusion. Given the complexity of the technology in this case, that omission is significant. *Cf. Bot M8*, 4 F.4th at 1353 ("The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology . . . ."). Further, while device transitions using dual 4G/LTE and 5G connectivity may be smoother than 5G alone, the complaint gives no reason to believe that transitions using 5G alone would not be smoother than those under a mix of Ethernet and WiFi, which Intellectros alleges Deere used before implementing its 5G system, *see* Am. Compl. 5 (citing Michael Robuck, *Feature: John Deere Fires Up Private 5G at Key Factory*, Mobile World Live (Apr. 1, 2025), https://www.mobileworldlive.com/industry/feature-john-deere-fires-up-private-5g-at-key-factory/, which states that "Deere is moving from a split of 70 per cent wired Ethernet and 30 per cent Wi-Fi, to 80 per cent mobile, 10 per cent Wi-Fi and 10 per cent Ethernet over the coming years"). Intellectros, of course, need not rule out all non-infringing possibilities to state a claim, only "obvious alternative[s]." *Hikma Pharms.*, 146 S. Ct. at 1399 (quotation marks omitted). But Intellectros cannot simply say that Deere's 5G network is infringing because the technologically optimal method would infringe. Intellectros must allege facts supporting a plausible inference that Deere actually used that method. In this case, all the complaint plausibly alleges is that Deere uses Nokia radios and that *some* Nokia radios *can* operate in dual-connectivity mode. This is not enough. Because Intellectros's theory of infringement depends

on Deere utilizing dual connectivity in its network, Deere's motion to dismiss Count II is GRANTED.

**CONCLUSION**

Accordingly, Defendant Deere & Company's motion to dismiss, ECF No. 18, is GRANTED. Plaintiff Intellectros LLC may file an amended complaint, if it so desires, within 14 days of the entry of this order. Deere's motion for leave to reply, ECF No. 24, is GRANTED. The Clerk is DIRECTED to file the reply, ECF No. 24-1, on the docket.

Entered this 21st day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE